1840.

Livingston
v.
Stickles.

---

## LIVINGSTON vs. STICKLES.

Where a lease in perpetuity contained a condition, and covenant, that upon every sale of the premises the lessee or his assigns should obtain the consent in writing of the lessor, and should offer to such lessor the pre-emptive right to purchase, and that if the premises were sold to any person after such offer, one tenth of the purchase money should be paid to the lessor, and the lessee afterwards contracted to sell the premises, and agreed to pay the tenth sale to the owner of the rent and reversion, and the purchasers actually took possession under their contracts to purchase; *Held*, that the remedy against the lessee, for the recovery of the tenth sale, if any, was at law, and not in equity; that the covenant and condition in the lease was in restraint of and in the nature of a fine upon alienation, inconsistent with the spirit of our institutions, and injurious to the community; and that the court of chancery would not interfere to enforce the performance of such covenants and conditions in leases, in cases in which the landlord, by the terms of his lease, had not secured to himself a remedy at law.

Whether the lessee is bound to pay the tenth sale, stipulated for in a lease upon every alienation of the premises, upon a mere contract to sell, and before he has actually received the whole purchase money agreed to be paid upon such sale, by the vendee, *Quære?*

No particular form of words is necessary to create a covenant in a lease, or conveyance; but any words will be effectual for that purpose which show that a party who executed the instrument intended to agree to do, or to refrain from doing, something in which the other party had an interest.

An equitable liability of the promisor is a sufficient consideration to support an express promise, so as to entitle the promisee to sustain an action at law for the non-performance of such promise.

THIS was an appeal from a decree of the late vice chancellor of the third circuit. The object of the complainant's bill was to compel the defendant, who was the assignee of a lease for lives, of land of which the complainant owned the rent and reversion, to pay to her a tenth of the purchase money agreed to be paid to him by those who had contracted to purchase his interest in the lease, but who had not received any legal conveyance or assignment thereof. The clause in the lease under which the claim arose was as follows : " And lastly, it is mutually consented, *covenanted and agreed,* by and between the parties to these presents, that if at any time hereafter, it shall so happen that the party of the second part, his executors, administrators, or assigns, should be minded or inclined to sell or dispose of the estate in the hereby demised premises, and the buildings and improvements to be erected and made thereon, that then and in every such case, it shall and may be lawful for them so to do, *provided* they shall first obtain a certificate in writing under the hand and seal of the said party of the first part, his heirs or assigns, signifying his or their consent and approbation to such sale or assignment, and shall and will also first offer and give the pre-emption or refusal of buying or purchasing the same unto the party aforesaid of the first part, his heirs and assigns ; and on every such sale or assignment, shall pay to the party of the first part, his heirs or assigns, a tenth part of the purchase or consideration money, for which the said premises are so sold or assigned." The interest in the lease came to the defendant by assignment, and the tenth sale on the assignment to him was paid ; and he continued in possession of the premises and paid rent therefor to the complainant, who was the assignee of the rent and reversion, until 1826. On the 2d of March, 1826, the defendant contracted to sell a part of the premises to H. Stickles, and to clear it from all incumbrances, for the consideration

1840.
———
Livingston
v.
Stickles.

May 19.

of $1500, payable in instalments, to be secured by a mortgage on the premises ; the purchaser to have possession on the first of April, 1826. And in March, 1827, he in like manner contracted to sell the residue of the farm to J. Bain, for $2800, payable by instalments, the purchaser to have possession on the first of April thereafter ; and the defendant agreed to indemnify Bain from the back rents and the tenth sale, up to that time. The purchasers from the defendant entered into possession of the parts of the premises contracted to be sold to them respectively, and paid the principal part of the purchase money ; and were still in possession at the time of filing the complainant's bill, in 1832. The complainant stated, in her bill, that the defendant subsequent to the making of these contracts for the sale of the premises, promised to pay her the tenth sale ; and that she afterwards brought a suit at law against him to recover the same, but was nonsuited at the circuit, on the ground that there was no consideration for the promise, inasmuch as there had not been an absolute technical legal sale and assignment of the defendant's interest in the premises, to the purchasers. She also brought ejectments against the purchasers, to recover the premises on account of the breach of the condition of the lease, in selling without paying the tenth sale, and was nonsuited in those actions, on the same ground. The cause was heard on pleadings and proofs ; and the vice chancellor decreed the payment to the complainant of the one tenth of the purchase money agreed to be paid to the defendant for his interest in the leasehold premises, with interest and costs. From this decree the defendant appealed.

*S. Stevens,* for the appellant. There is no personal liability on the part of the lessee or his assigns, to pay the tenth sale to the landlord. No action, therefore, can be maintained, either at law or in equity, to recover it. Should it be considered that the lease contains a covenant, either express or implied, that the lessee and his assigns would not violate the condition upon which he was permitted to

alien the estate, then we humbly insist that there has been no violation of that condition. But if there has been a breach of that condition, by the alienation of the defendant without paying the tenth of the consideration to the landlord, and consequently a breach of the supposed covenant to observe and keep that condition, still we insist that that forms no ground for relief in equity. Whether the complainant is confined to the remedy of re-entry for the breach of the condition, or whether she is entitled to damages for the breach of the covenant to observe and keep that condition ; in either case she has a full and perfect remedy at law. Whether the complainant seeks to forfeit the estate of the tenant for the breach of this condition, or to recover the tenth sale as damages in lieu of such forfeiture, the principle is the same ; in either case the recovery would be for a forfeture incurred by the breach of a condition in restraint of alienation. No remedy for the breach of such a condition or such a covenant will ever be enforced in equity ; but the party will be left to such remedy as the law may be compelled to afford. There is a total want of equity in such a claim. The breach of that condition and all the consequences attending such breach, have been waived by the complainant, by the acceptance of rent after such breach.

*C. Bushnell*, for the respondent. The bargain and sale, and payments, and change of possession, and continued occupancy, &c. of the farm in question, constituted in equity a sale and assignment, or disposition of the farm, within the meaning and intent of the lease ; and the appellant was therefore liable to account for, and to pay to the respondent, one tenth of the consideration money of said sale. The lease of the farm in question to P. Vander Bogert contains an express covenant, running with the land ; binding on each successive assignee, in law or equity, that on each and every sale or assignment, the lessee, his executors, administrators or assigns, shall and will pay to the landlord, &c. a tenth part of the purchase or consideration mo-

1840.

Livingston
v.
Stickles.

ney. And such covenant was a part of the original consideration of the grant, as much as the rent reserved ; and its performance is to be favored and enforced as much as the payment of rent, whenever the landlord assents to the sale directly or indirectly. The sale of one part of the farm at one time to one person, and of the residue at another time to another person, so as together to constitute a sale of the whole, is a sale and disposition thereof within the meaning of the covenant in the lease ; and if affirmed by the landlord, makes the vendor liable for the tenth sale, the same as if a prior consent had been obtained to the sale. The agreement, bargain, sale and delivery of the premises proved in this case, is either an assignment within the meaning of the covenant, or it is a fraudulent attempt to evade the covenant, conditions and terms of the lease ; of which, equity will not permit the fraudulent party to enjoy the fruits to the injury of the innocent party. It is clear, from the facts in the case, that Bain and Stickles, &c. contemplated and intended an actual transfer to them of the premises, and of all the right of the defendant therein ; and that they have ever since considered it an actual transfer and disposition of the whole farm. And surely equity will charge them with the consequences, as on a formal sale and conveyance.

THE CHANCELLOR. The objection that the lease contains no covenant on the part of the lessee or his assigns to pay the tenth sale, so as to render them personally liable upon an alienation of the premises, with the consent of the lessor, does not appear to be well taken. If it were a mere condition, then it is evident the only remedy of the lessor would be by a proceeding against the purchaser, to recover the premises for a breach of the condition. But a clause of this kind may be so framed as to operate both as a covenant and as a condition ; so as to give the lessor an election, either to proceed by an action of covenant, to recover damages for a breach thereof, or by an ejectment to enforce the forfeiture. No particular form of words is ne-

cessary to create a covenant. But any words will be effectual for that purpose, which show that the party sought to be charged as a covenantor intended to agree to do, or to refrain from doing, something in which the other party had an interest. In *Harrington* v. *Wise*, (*Cro. Eliz.* 486,) where the agreement was, " it is covenanted and agreed between the parties, that J. H. doth let the said lands for five years, provided, always, that the said W. shall pay to him annually during the term £120 ;" the court decided that this was a covenant for the payment of the rent, as well as a condition. (*See also Doe* v. *Watt, 8 Barn. & Cress. Rep.* 316 ; *Coventry's Read. ed. of Coke,* 203.) Here, in addition to the clause of the lease which the appellant's counsel contends is a condition merely, the parties had inserted a previous covenant, on the part of the lessee and his assigns, well and faithfully to pay, fulfil, accomplish, and perform, not only the yearly rents therein before mentioned and reserved, but also " all and every the several and respective payments, *covenants, clauses, and conditions* following," &c. among which payments and conditions was this payment of the tenth sale upon every alienation. This is an express covenant, therefore, even if the subsequent clause, taken by itself, would have operated as a condition merely.

The objection that the complainant's remedy, if any, was at law, and not in this court, appears, however, to be well taken. The bill states expressly that after these contracts for the sale of the premises, the defendant promised the complainant to pay her the tenth sale. And the evidence of Mr. Morris is, that she proved on the trial at law, in the suit brought for the recovery of the tenth sale, that the defendant had promised to pay the same. If the defendant therefore was either legally or equitably liable for the payment of the tenth of the purchase money for which he had agreed to sell the premises, it was a good consideration for this express promise to pay. And the complainant, instead of coming into this court, should have applied to the supreme

court to set aside the nonsuit which the circuit judge had erroneously granted.

Whether the defendant was equitably bound to pay this tenth sale upon a mere contract to sell, and before he had actually received all the purchase money, is a question not necessary to be considered here, as I am satisfied this is not a case in which this court ought to give relief, if the defendant is not legally liable upon the covenant. It is a condition in restraint of alienation, which courts of law always construe with great strictness against the lessor. It is in effect a fine upon alienation, similar to that which existed under the military tenures, and which were abolished in England upon the restoration of Charles 2d; or to the *lods et ventes* of the French feudal tenures. And although these covenants and conditions, in restraint of the alienation of *leasehold* property have been sustained by the courts, while they have been considered as absolutely void in conveyances in fee, there is no principle which requires a court of equity to sustain them any further than the landlord has secured the legal right by the terms of his contract. The question has been mooted in France, whether the *lods et ventes* is payable upon a mere agreement to sell; and the better opinion appears to be, that it is payable where there has been a real sale of the premises, although the conveyance has not been executed before a notary, so as to give a perfect title to the purchaser; but that it is not payable upon a mere agreement to sell. (*See* 10 *Guyot's Repert. of Jurisp.* 603, *art. Lods et Ventes,* § 4.) But as there is no distinction between legal and equitable remedies recognized in the French courts, the question whether a court of equity should go beyond the strict rules of law in enforcing the claims of the landlord in such a case could not arise there. In the present case, the defendant who has not in fact assigned his lease, so as to give to the complainant a remedy against the persons to whom he has contracted to sell, may still be liable to her upon the covenants running with the land, whenever he makes an actual assignment to the purchasers, pursuant to his contracts

with them.  But as he has covenanted with them to clear the premises from the tenth sale upon their purchases, if it is in truth an incumbrance on the title, and as he must also get the complainant's consent to such alienation if it has not already been given, it is doubtful whether he has made contracts which can be enforced against the purchasers, either at law or in equity.  And certainly if he has not made such contracts for the sale as could be enforced here without the consent of the complainant, there is good grounds for saying that there has not been an alienation of the premises in equity.

I prefer to put my decision in this case, however, distinctly upon the ground that these agreements in the nature of fines upon alienations, are inconsistent with the spirit of our free institutions, and injurious to the community.  And although this court has no right to interfere with such contracts, so far as the laws of the state sanction their validity, it ought not to interpose its extraordinary jurisdiction, to enforce the rights of the landlord, in cases where he has not by his contract secured to himself a legal right; as contradistinguished from an equitable claim, to enforce a hard bargain for which the law gives him no right of action.

For these reasons the decree of the vice chancellor must be reversed.  And the complainant's bill must be dismissed with costs; but without prejudice to her rights at law, if she has any, either for the recovery of the tenth sale, or to enforce a forfeiture of the lease.