MARTIUS T. LYNDE *vs.* HENRY R. HOUGH and H. B. NEWCOMB.

In an action of ejectment for the breach of a condition by a lessee, the words " let and underlet," in the lease, will be construed to mean a demise or underletting, and not an assignment of the whole interest of the lessee..

The literal meaning of the word " let" does not extend to an assignment of the term.

Accordingly, where a lessee covenanted " not to let or underlet the whole or any part of the demised premises without the written consent of 'the landlord, under the penalty of forfeiture and damages," *it was held* that by a strict and literal interpretation of this covenant it did not include an assignment, by the lessee, of all his right and interest in the lease.

APPEAL from a judgment of the city court of Brooklyn. The plaintiff, being on the 7th day of February, 1853, the owner in fee simple of the lot, house and premises known as No. 2 Clark street, in the city of Brooklyn, let and rented the same to Edward C. Hough, for three years from the 1st of May, 1853. In the agreement was the following clause : " The premises are not to be used or occupied for any business deemed extra hazardous, on account of fire, *nor shall the same or any part thereof, be let or underlet without the written consent of the landlord, under the penalty of forfeiture and damages.*" The lessee executed a counterpart of the lease, by which he engaged " not to let or underlet the whole or any part of said premises, without the written consent of the landlord, under the penalty of forfeiture and damages." The lessee on the 1st day of May, 1853, transferred all his " right and interest" in the said lease to Henry R. Hough, one of the defendants, without the consent of the plaintiff, by an assignment indorsed on the back of the lease. The plaintiff claimed, and attempted to prove that a portion of the premises was subsequently underlet to the defendant, Harvey B. Newcomb, without the plaintiff's consent. The plaintiff thereupon commenced an action in the city court of Brooklyn, to recover the possession of the premises demised, and on the trial, before a jury, recovered a verdict

and judgment, and the jury assessed the value of the premises at $4000. The defendants appealed from the judgment to this court.

Beck & McAdam, for the appellants. I. In ejectment, the plaintiff is bound to show either a regular paper title or actual possession. The plaintiff in this action did neither of these things, and the defendants' motion for a nonsuit should, therefore, have been granted. (*Gardner* v. *Heartt*, 1 *Comst.* 528.)

II. In order to entitle the plaintiff to recover in ejectment, he must have a right to *immediate* possession. Whatever takes away that right constitutes a legal defense. (*Hunter* v. *Trustees of Sandy Hill*, 6 *Hill*, 411.) The lease produced and put in evidence in this action showed the right to the possession of the premises out of the plaintiff, at the time of the commencement of this action, and for this reason the defendants' motion to dismiss the complaint should have been granted.

III. There was no evidence of the forfeiture of said lease, or of the interest thereby conveyed; and therefore, and for the other reasons assigned by the defendants' counsel, on his motion to dismiss the complaint, such motion should have been granted. (1.) It was the duty of the plaintiff to establish, by clear evidence, a forfeiture of the lease. Forfeitures are not favored in the law, and those claiming under them must bring their case within the penalty, on the literal and rigid interpretation of the covenant. (*Jackson* v. *Silvernail*, 15 *John.* 278. *Jackson* v. *Harrison*, 17 *id.* 66. *Ludlow* v. *Harlem R. R. Co.*, 12 *Barb.* 440. *And other authorities cited below.*)

IV. The various exceptions taken to the judge's charge, and to his refusals to charge, were severally well taken, and in those respects his honor the judge erred. (1.) The judge erred in charging the jury that the case resolved itself into a mere question of law, and that the plaintiff was entitled to recover, &c. There were important questions of fact involved in the case, all of which were at once taken away from the consider-

Lynde *v.* Hough.

ation of the jury under this general charge. The jury should be left to find the facts, and to render their verdict according to such finding, applying the law thereto as laid down by the court. (2.) The mere fact of the defendants being in the possession of the premises is not, in such an action as this, evidence of their being in as *tenants* or *under-tenants*, or otherwise, in violation of the lease. (*Doe* v. *Paine*, 1 *Starkie*, 86, cited in *Platt on Covenants*, 497. *Camp.* 73, cited in *Platt on Cov.* 408. *Church* v. *Brown*, 15 *Ves. jun.* 265. *Dolittle* v. *Eddy*, 7 *Barb.* 75. *Wilson* v. *Martin*, 1 *Denio*, 602.) These are some of the cases found in the books, showing the various conditions and circumstances under which a person may be in possession of real estate, and not be deemed in as tenant or under-tenant. (3.) If the supposed underletting consisted in a demise to the defendant Newcomb, it is quite evident that no such demise was made by Edward C. Hough. He had parted with his interest in the premises long before Newcomb came into possession. And the restriction was one personal in its application to Edward C. Hough. The restrictive words are, " I engage not to let or underlet," &c. In such a case the restriction does not extend to the *assignee*, nor even to the executor of the person restrained. (2 *Greenl. on Real Prop.* 7, § 38. 4 *Kent's Com.* 129.) (4.) The assignment from Edward C. Hough to Henry R. Hough was not a letting or underletting in violation of the terms of the lease. An assignment transfers the entire interest of the assignor in the premises. (4 *Greenl. on Real Prop.* 120. 4 *Kent's Com.* 96. *Post* v. *Kearney*, 2 *Comst.* 396.) A letting or underletting necessarily implies the relation of landlord and tenant; and either a reversionary interest in the lessor, or the reservation of rent; and neither of these facts exist in this case. (*Taylor's Land. and Tenant*, 3, 4.) See definition of " underlease," in *Burrill's Law Dictionary:* " A lease granted by one who is himself a lessee for years for any fewer or less number of years than he himself holds," &c. A covenant not to assign will not prevent tenant from underletting. (*Jackson* v. *Silvernail*, 15 *John.*

279.) And this is not upon the ground that the act permitted is more or less hurtful to the landlord, but simply because an assignment, the act forbidden, is one thing, and a letting or underletting, the act permitted, is another and different thing. The same reasoning applied to this case, declares the assignment by Edward C. Hough no violation of the clause against letting. The case of *Greenaway* v. *Adams*, (12 *Vesey*, 395, *cited in Archbold's Landlord and Tenant*, 102,) referred to by the plaintiff's counsel at the trial, (if its import be rightly apprehended by plaintiff's counsel,) is an isolated case, standing opposed to all the analogous cases found in the books. The judge deciding that case, thought " it would be very strange, if the landlord meant to restrain underletting, that he should not mean to forbid the tenant to part with the whole interest." We submit that that case is no authority on the point involved here, for these reasons : (*a*) The restrictive language of the lease in that case was much broader than in this. (*b*) The judge did not reason soundly in saying that it would be strange, &c. as above quoted. Many reasons exist why a landlord should wish to forbid underletting, and care nothing for an assignment. (*c*) Whether it would be *strange*, or not, that a landlord should wish to do this or that, has nothing to do with the case. The question is, what has he done? Has he forbidden the act complained of? (*d*) The case referred to was not one between landlord and tenant, where the landlord was claiming to recover as for a forfeiture. This makes a vast difference in the cases. (5.) The distinction between an under-tenant and an assignee is recognized in all of the following cases, in which also it is laid down as the rule of law, that a person in possession of demised premises will be deemed in as assignee, and not as under-tenant. (*Acker* v. *Witherell*, 4 *Hill*, 112. *Haywood* v. *Miller*, 3 *id*. 90. *Schermerhorn* v. *Negus*, 2 *id*. 337. *Carter* v. *Hammett*, 12 *Barb*. 262. *Glover* v. *Wilson*, 2 *id*. 265. *Post* v. *Kearny*, 2 *Comst*. 396.) (6.) The restrictive clause under which the plaintiff claims in this action is not a condition of the lease,

but a mere covenant. The language is, "I engagé not to let or underlet," &c. The language of a condition is, "provided," "upon condition," and the like. (3 *Greenl. on Real Est.* 428. *Parmelee* v. *Oswego and Sy. R. R. Co.,* 2 *Seld.* 74. *Jackson* v. *Brownson,* 7 *John.* 227. *Jackson* v. *Silvernail,* 15 *id.* 277. *Jackson* v. *Harrison,* 17 *id.* 66. *Bleecker* v. *Smith,* 13 *Wend.* 530.) Even where the word "proviso" is used, it will not always create a condition; for, if a penalty be annexed for non-performance, it will still be deemed but a covenant. (*Taylor's Land. and Tenant,* 135.) Furthermore, there is no right of re-entry reserved, and for that reason the action cannot be maintained. (*Platt on Covenants,* 424. *Spear* v. *Fuller,* 8 *N. Hamp. Rep.* 174.) *Doe* v. *Phillips,* (2 *Bingham,* 13,) in which Best, Ch. J., says: "For this reason, therefore, I am inclined to consider the stipulation a covenant, rather than a condition; and also because the lessor, if he had intended it to be a condition, might have inserted an express clause of *re-entry.*" The law leans strongly against forfeitures; and in all cases, if it be doubtful whether a clause in a deed be a covenant or a condition, it will be held to be a covenant. (4 *Kent's Com.* 131.) (7.) It is not provided in the lease that the doing or not doing of any act shall terminate the lease. The lessee engages not to do certain things under penalty of "forfeiture and damages." Forfeiture of what? The law will not supply words to make out a forfeiture which it so strongly "leans against."

V. It is to be borne in mind that the plaintiff's claim in this action is *stricti juris;* and it is to be scanned in all its phases with the strictest scrutiny. (*See authorities above cited.*)

*John A. Lott,* for the respondent. I. The assignment by the lessee, Edward C. Hough, to the defendant, Henry R. Hough, was a forfeiture of the lessee's right under the lease. It was a letting of the whole premises. (*Greenaway* v. *Ad-*

*ams,* 12 *Vesey,* 395, &c. *Archbold's Landlord and Tenant,* 102.)

II. The evidence proved an underletting. This, irrespective of the assignment referred to, forfeited all rights of the lessee and those claiming under him. (2 *Greenleaf on Evidence,* §§ 328, 319. *Jackson* v. *Brownson,* 7 *John.* 227; *opinion of Van Ness, J.,* at *p.* 232. *Roe* v. *Harrison,* 2 *T. R.* 415–425.)

III. The proof the plaintiff's title, and the forfeiture of the lessee's right under the lease, entitled the plaintiff to a verdict and judgment thereon.

IV. The defendant's motion for a dismissal of the complaint was properly denied.

V. If the proof of the plaintiff's title was insufficient to support the action when that motion was first made, the defect was supplied by the lease and counterpart subsequently introduced by the defendants, and the introduction of that evidence was a waiver of the exception taken on the denial of the motion at that time.

*By the Court,* EMOTT, J. The lease and counterpart contain provisions in regard to letting or underletting which are substantially identical. In the instrument signed by the lessor the phraseology is, the premises shall not "be let or underlet without the written consent of the landlord, under the penalty of forfeiture and damages." In the counterpart signed by the lessee he "engages not to let or underlet the whole or any part of said premises without the written consent of the landlord, under the penalty of forfeiture and damages."

The appellants contend that these words do not make a condition, the breach of which would terminate the lease. But I am satisfied that we must construe the word "forfeiture" to mean forfeiture of the term and estate. There is no other sensible meaning which can be attached to it, and while courts will construe strictly clauses which create conditions and go to defeat estates, that does not mean that we have a

Lynde *v.* Hough.

right to disregard the obvious intentions of parties, or the reasonable sense of their words, in such an instrument as this, although they may be inartificially expressed. It is true that when there is a question whether a clause in a deed or a lease is a covenant or a condition, the courts have leaned strongly against construing it as a condition. But that is not the question here. The question is whether the words " on penalty of forfeiture" are sufficiently clear and precise to express the intentions of the parties, that a breach of the agreement should work a forfeiture of the lease. There is no dispute that the previous words make a covenant not to " let or underlet;" and I think there is no doubt that the parties intended by the use of the phrase in question to make the breach of that covenant a forfeiture of the lease. These words are not a necessary part of the covenant, nor can they have any effect ·or operation unless they make a condition. In such a case, we have not the right to disregard their intention, when it is manifest, or to apply to such an instrument as this, any rule more rigid than to require that the agreement of the parties should be intelligibly expressed. The rule of the law has always been that the same precise words of condition are not required in leases for years as in conveyances of freehold estates. (2 *Co. Litt.* 204 *a.*) Words similar to those used in the lease now before us received a similar construction, and upon these principles, in a very ancient case which is cited and approved by Coke, (*ub. supra.*)

But upon the other questions in the case, I think the court below was wrong. In order to show a breach of this covenant, and a consequent forfeiture, the plaintiff gave some evidence tending to show an *underletting* of a part of the premises, but it was of a very inconclusive character. An occupation of certain rooms by the defendant Newcomb, was proved, but in what capacity, or under what authority, did not appear. This occupation was also subsequent to the assignment of the lease by the lessee to Henry R. Hough, and if the breach now alleged to have consisted in an under-

letting to Newcomb, by Edward C. Hough, the orignal lessee, which would, undoubtedly, if proved, have made out the plaintiff's case, that should have been left to the jury, on this evidence, to determine as a question of fact. If there was a demise to Newcomb but made by an assignee of the original tenant and not by Edward C. Hough who made the covenant in question, then I think there was no breach or forfeiture, unless the assignment of the whole term forfeited the lease ; which probably was the view taken by the court below, and which I will consider presently. The covenant is both collateral and merely personal. It is the engagement of the lessee for himself alone, not naming his assigns, whether actual or legal. And if he had a right to assign the whole term his assignee takes the estate without the condition, as not being bound by the covenant. This is a legitimate consequence of the rule in *Dumpor's case* (4 *Rep.* 119,) which, however it may have been wondered at since Lord Mansfield's time, and even before, has never been denied. It is also a rule which has been held expressly in similar cases, for such conditions have never been favored. (*Cro. Jac.* 398. *Whidicot* v. *Fox*, 2 *Cruise's Dig.* 7. *Dyer*, 60 *a*, *pl.* 8. *Moore*, 4, *pl.* 40. 4 *Kent's Com.* 130.)

This leaves the question whether the assignment of this lease, made by the lessee to the defendant Henry R. Hough, on the 1st of May, 1853, was a breach of the condition, and a forfeiture of the term. The city judge undoubtedly considered it to be so, in instructing the jury that the facts proven warranted them in finding for the plaintiff ; that there was no conflict of evidence and the case was resolved into a mere question of law. The judgment of Sir William Grant, M. R. in *Greenaway* v. *Adams*, (12 *Ves.* 395,) is cited to sustain this view. That was an action for a specific performance, and the question was whether the lessee of a public house who had contracted to sell and assign his lease could do so without the consent of the lessor. The lease contained a condition that the lessee should not "let, set or demise" the

Lynde *v.* Hough.

premises without consent. It was strongly insisted, on the argument at the rolls, that the word "set" included an assignment or conveyance of the whole term, and I understand the master of the rolls to adopt and decide the case upon that view. And the words of the covenant in that case could not have distinct operation and effect without reference to an assignment. (*Crusor* v. *Bugby*, 3 *Wils.* 234.) It is true, the learned judge argues that a landlord who uses words indicating a design to forbid underletting must mean to forbid the tenant parting with his whole interest. But I cannot regard this as the point of view in which we are bound, or indeed have a right, to look at the question. The question is not whether the landlord could reasonably be supposed, after he had forbidden an underletting, to have no objections to an assignment of the whole term. When we reach this part of the case and come to the construction of this clause in the lease, the rules to which I have adverted, and which are contended for by the defendants, unquestionably apply. The extent and meaning of the covenant or condition, and the fact of a breach, are questions *strictissimi juris,* and a plaintiff to defeat an estate of his own creation by means of such a condition, must bring the defendant clearly within its letter. (*See Livingston* v. *Stickles,* 8 *Paige,* 398; *S. C. in error,* 7 *Hill,* 253; *Jackson* v. *Silvernail,* 15 *John.* 278; *Jackson* v. *Harrison,* 17 *id.* 66.) The question is whether on a strict and literal construction of the covenant the act of the defendant is within its terms, and so forbidden. I think the use of the word "set" in the covenant in the case of *Greenaway* v. *Adams,* a word which includes and in its primary sense refers to a conveyance of the entire estate or thing, distinguishes that case from this. And without impugning that decision, I do not consider it an authority on the present question. At any rate I cannot entertain any doubt that in an action of ejectment for the breach of a condition we must hold that the words "let and underlet" mean a demise or underletting and not an assignment of the whole

interest. In the case of *Roe dem. Gregson* v. *Harrison*, (2 *T. R.* 425,) the word "let" which was coupled there with "set" and "assign over," was construed to mean underlet, and the whole covenant held to forbid an underlease as well as an assignment. It seems plain to me that the literal meaning of the word let does extend to an assignment of the term, and if so we have no right to speculate upon the question whether it would be reasonable or otherwise for a landlord to forbid an underlease and not an assignment. It is enough that by a strict and literal interpretation of this covenant, it does not include such an assigment as was proved on the trial.

The judgment must be reversed, and a new trial ordered; the costs to abide the event.

[DUTCHESS GENERAL TERM, April 14, 1857. *S. B. Strong, Birdseye* and *Emott*, Justices.]