| 49 | 425 |
|----|-----|
| 50a | 638 |
| 50a | 639 |
| 49 | 425 |
| 63a | 233 |
| 49 | 425 |
| 73a | 708 |
| 49 | 425 |
| f191 | ³639 |

## Samuel Voris *et al.*

*v.*

## William Renshaw, Jr.

1. DEEDS—*containing condition against a conveyance within a limited period— construction thereof.* Where the grantor in a deed, annexed to the grant a condition that the grantee should not convey the property, except by lease for a term of years, prior to a certain day named therein, and the grantee afterwards, and within the limited period, executed to a party a lease of the premises for 99 years, and also, at the same time, gave to him a bond for the conveyance of the property in fee, after the expiration of the limitation, and received from the purchaser the purchase price therefor: *Held*, that these acts of the grantee were not prohibited by the condition, and hence worked no forfeiture of the estate.

2. SAME—*condition to avoid an estate—construed strictly.* A condition to avoid an estate must be taken strictly. It cannot be extended beyond its express

terms. And when a party insists upon the forfeiture of an estate under a condition, he must bring himself clearly within its terms.

3. FORFEITURES—*not favored.* The law does not favor forfeitures, but refuses to enforce them, whenever wrong or injustice will result therefrom ; and before a forfeiture will be enforced, a clear case, appealing to the principles of justice, must be established.

APPEAL from the Circuit Court of Peoria county ; the Hon. SABIN D. PUTERBAUGH, Judge, presiding.

On the 26th day of April, 1850, George Morton, being the owner in fee of block 104 in Morton, Voris & Laviell's Addition to Peoria, conveyed the same to his son, Peter Morton, in consideration of one dollar and natural love and affection, and "upon this express condition, that the said grantee shall not convey the above property, except by lease for a term of years, to any person whomsoever, prior to January 1st, 1861."

On the 9th of July, 1853, Peter Morton leased the premises to William Renshaw, Jr., for ninety-nine years, and on the same day executed to Renshaw a bond, reciting that he had sold the property to Renshaw for the sum of $10,000, cash in hand paid, and conditioned that Peter should convey the same by deed to Renshaw after Jan. 1st, 1861, and before Jan. 1st, 1862.

Peter Morton died in 1857, intestate, leaving certain heirs at law, and in 1858 Samuel Voris took possession of the premises, claiming under those heirs.

In 1861, Renshaw exhibited his bill in chancery in the circuit court of Peoria county, against the heirs at law of Peter Morton, and Voris, to enforce his rights under his contract of purchase. An answer and cross-bill were filed by Voris.

Such proceedings were had, that in 1867 the cause came on for final hearing, and a decree was entered, that Voris take nothing by his cross-bill, and that the same be dismissed ; that Voris should convey to Renshaw all the title to said land which he acquired from the heirs of Peter Morton, deceased, with

proper covenants against incumbrances done or suffered by said Voris, and that he surrender the possession of the same on or before the 27th of August, 1867; that defendants pay the costs, and that execution issue therefor; that in case of Voris' failure to make the deed or surrender the possession, the master should make the deed, and the sheriff should put Renshaw into possession.

Voris and his co-defendants thereupon took this appeal, and now insist that the transaction between Renshaw and Peter Morton was in violation of the condition in the deed from George Morton, and that Renshaw acquired no rights thereby; while, on the other hand, Renshaw contends the transaction was not in violation of such condition, and if the condition must be so construed it is void.

Mr. H. M. WEAD and Mr. D. McCULLOCH, for the appellants, contended,

*First*, That the condition in the deed from George Morton to Peter Morton, that the latter should not convey until after a specified time, was valid and binding, citing 2 Cruise's Digest, ch. 1, p. 2, Title 13, sec. 1, and sections 9, 15 and 22 of the same chapter; 2 Bacon's Abr. (7th ed.) 130; *Doe ex dem. Gill and wife* v. *Pearson*, 6 East, 173; Co. Litt. 223, sec. 361; 1 Wash. on Real Prop. (2d ed.) 470; *McWilliams* v. *Nisby*, 2 Serg. & Rawle, 507; Shep. Touch. 131; *Gray* v. *Blanchard*, 8 Pick. 283; *Blackstone* v. *Davis*, 21 Pick. 42; *Jackson* v. *Schutz*, 18 Johns. R. 183; *Shackelford* v. *Hall*, 19 Ill. 212.

*Second*, The lease from Peter Morton to Renshaw for ninety-nine years, and the bond for a conveyance to be made after the time limited, were a violation of that condition. *Doe ex dem. Mitcheson* v. *Carter*, 8 Term R. 170; *Doe* v. *Hawke*, 2 East, 481.

Mr. T. LYLE DICKEY, for the appellee.

If the condition must be construed as contended for by counsel for the appellants, it is void. Greenleaf's Cruise, Title 13, sec. 22; 1 Hilliard on Real Prop., p. 369, ch. 27, sec. 20; Shep. Touch. vol. 1, p. 129, *et seq.*; Litt. Tenures, book 3, ch. 5, sec. 360; 2 Spence Eq. Jur. 89; *Hawley et al. v. Northampton*, 8 Mass. 37; *Hall v. Tufts*, 18 Pick. 455.

But the condition has not been violated. It must receive the most strict interpretation. Cruise, Title 23, ch. 2, sec. 1; 1 Shep. Touch. 133; *Lynde v. Hough*, 27 Barb. N. Y. 423; *Jackson v. Silvernail*, 15 Johns. 278; *Livingston v. Stickles*, 7 Hill, 255; *Crusoe v. Bugby*, 3 Wils. 234; 2 Wm. Bl. 776; *Doe v. Hogg*, 4 Dowl. & Ryl. 226.

Again, the clause in the deed from George Morton to Peter Morton, of April 26, 1850, is a *condition* and not a *limitation* of the estate. See Wendell's Blackstone's Com. 2d book, p. 155, top p. 154, ch. x,—and therefore a breach of the condition does not *ipso facto* terminate the estate granted by George Morton to Peter Morton, but the estate continues until George Morton shall declare the forfeiture. This *he* has *never* done, and the right to do so is personal and not transferable, and Voris has no power or authority to make such declaration. Shep. Touch. vol. 1, pp. 149, 153, top pp. 184, 278; *Nicoll v. N. Y. & E. R. R. Co.*, 12 Barb. N. Y. 460; *Underhill v. Sar. & Wash. R. R. Co.*, 20 Barb. N. Y. 455.

Mr. JUSTICE WALKER delivered the opinion of the Court:

There is no dispute that George Morton was the owner of the block of ground in controversy, and that he, on the 26th day of April, 1850, executed a conveyance of the same to his son Peter. The consideration expressed in the deed was one dollar and natural love and affection. But the deed contained this clause:

" To have and to hold the premises with the appurtenances, unto the said party of the second part, and his heirs and assigns forever, upon the express condition, however, that the said party of the second part shall not convey the above described property, except by lease for a term of years, to any person whomsoever, prior to the 1st day of January, 1861."

It appears that on the 1st day of March, 1851, Peter Morton leased the property to B. C. Harris for the term of ten years, reserving an annual rent of fifteen dollars. Again, on the 9th day of July, 1853, he executed another lease on the same premises to appellee for the term of ninety-nine years, reserving a yearly rent of one dollar. and on the same day he also executed to him a bond for a conveyance of the premises in fee between the 1st days of January, 1861 and 1862, and received from appellee $10,000 as the purchase money. The bond and lease were duly recorded in the proper office, on the 13th day of July, 1853.

On the 2d day of November, 1853, Harris' interest in the premises was sold under an execution against him, and was purchased by appellee, and he received a deed for the same from the sheriff. On the 6th day of November, 1854, Harris assigned his lease to George Morton. Peter Morton died in the year 1857, unmarried, without children or descendants of children, and intestate. Samuel Voris subsequently obtained deeds for the conveyance of the premises from all of the heirs at law of Peter Morton, between the 20th day of August, 1858, and the 18th day of November, 1859, all of which were duly recorded prior to the 6th day of January, 1860. He also took possession of the premises in 1858, and has occupied them ever since, claiming to be the owner.

The case having been heard in the court below, the relief sought was denied and a decree rendered dismissing the bill, from which an appeal was prosecuted to this court, and the decree reversed and the cause remanded for further proceedings.

The cause was again tried upon substantially the same proofs, and a decree was rendered in favor of complainant, granting the relief prayed, from which the defendants below prosecute an appeal and ask a reversal.

Inasmuch as the lease from Peter Morton to Harris expired before these proceedings were commenced, it is not in the case, and can have no bearing on the conclusion at which we have arrived. The only question we propose to reconsider is the same that was presented and discussed when the case was previously before the court, and that is, whether the lease for ninety-nine years, and the bond for a conveyance, executed by Peter Morton to appellee, were in violation of the condition annexed to the conveyance from George to Peter Morton. Other questions are raised and discussed in the elaborate and very able argument filed by appellants, but after a full, careful and thorough examination of the case, in the light of the arguments and authorities cited, we deem it unnecessary to discuss any other question. And after the most mature reflection we have been able to bestow upon the case, we have arrived at the same conclusion that was announced when the case was previously before the court, but for different reasons from those then assigned.

Admitting that the condition is not repugnant to the estate, and is valid and binding, still the question is presented, whether, by executing the lease for ninety-nine years, and the bond for a conveyance after the time should expire, within which Peter Morton was prohibited from alienating, worked a forfeiture of the estate conveyed to Peter by the deed containing the condition. Conditions subsequent are not favored in law, and are construed strictly, because they tend to destroy estates; and a rigorous exaction of them is a species of *summum jus*, and in many cases hardly reconcilable with conscience. 4 Kent Com. 129. And as illustrating the rule, we find that it has been held, that where the condition is personal to the grantee, as that he shall not sell without leave,

the executors of the lessee not being named in the condition, may sell without incurring a breach. Dyer, 65; Moore, 11.

In Shep. Touchstone, vol. 1, p. 133, it is said:

"It is a general rule, that such conditions annexed to estates as go in defeasance and tend to the destruction of the estate, being odious to the law, are taken strictly, and shall not be extended beyond their words, unless it be in some special cases. And therefore, if a lease be made, on condition that if such a thing be not done, the lessor (without any words of heirs, executors, &c.,) shall re-enter and avoid it,—in this case regularly the heirs, executors, &c., shall not take advantage of this condition. So, if one make a lease for years of a house, on condition that if the lessor shall be minded to dwell in the house, and shall give notice to the lessee, that he shall depart,—in this case, if the lessor die, his heirs, executors, &c., shall not have the like advantage and power as the lessor himself, for the condition shall not be extended to them. And hence it is, that if a lease for years be made, on condition that the lessee shall not alien without license of the lessor,—in this case the restraint shall continue during the lives of the lessor and lessee, and no longer. And yet this rule hath an exception; for if a man mortgage his land to W. upon condition that if the mortgagor and J. S. pay 20s. such a day to the mortgagee, that then he shall re-enter, and the mortgagor die before the day; in this case J. S. may pay the money and perform the condition."

The rule is fully recognized in Litt. Ten., sec. 337; 1 Smith's Leading Cases, 20, p. 79, Am. ed., and the authorities there cited fully sustain it. In fact, the old books abound in cases that support the rule. And it is held that where there is a condition that the lessee shall not sell or assign, the sale by the assignee of a bankrupt lessee, or under an execution or other assignment in law is held to be no breach of the condition, *Philpot* v. *Hoar*, 2 Atk. 219; *Doe* v. *Bevan*, 3 M.

432    Voris *et al. v.* Renshaw.    [Sept. T.,

Opinion of the Court.

& S. 353 ; *Doe* v. *Carter*, 8 T. R. 57, unless such a sale is pro-, duced by the lessee in fraud of the condition.

In the case of *Cobb* v. *Prior*, 2 Scam. 35, it is held, that if a man devises land to his wife, during the minority of his son, upon condition that she shall not do waste, and dies, and the wife marries again and afterwards dies, and the husband commits waste after her death, the condition is not broken, because a condition to avoid an estate shall be taken strictly. In Dumpor's case, 4 Coke, 119, it was held that a condition in a lease, that the lessee or his assigns shall not alienate without special license of the lessor, is determined by an alienation by license, and no subsequent alienation is a breach of the condition, nor does it give a right of entry to the lessor. And in such a condition a license to one lessee is a license to all, or a license to alienate a part of the demised premises is a license to alienate the entire land.

In the case of *Snyder* v. *Hough*, 27 Barb. 415, it was held, that the extent and meaning of a condition, and the fact of a breach, are questions *strictissimi juris*, and a plaintiff, to defeat a condition of his own creation, must bring the defendant clearly within its letter. And in the case of *Emerson* v. *Simpson*, 43 N. H. 473, the same rule is announced, after a review of the authorities to which we have referred, as well as many others.

These cases, it is true, involve conditions contained in leases, and not a conveyance of the fee. The last case referred to, however, was where a forfeiture of the fee was claimed, because it was alleged that the condition of the grant had been broken. In that case there was a condition, that if the grantee should fail to keep up, at his own expense, forever, a good and sufficient fence between the land granted and other land specified in the condition, then the deed was to be void. And the court refer to the authorities we have cited, and apply the rule they announce, and decide it on them.

No reason is perceived why the rule should not apply in the one class of cases as well as the other. It is true, that in many, if not a large majority of cases, the fee conveyed is more valuable than a leasehold estate of the same or other property, but that cannot alter or modify the rule. The right to protection in the one is as sacred in the eye of the law as the other. The law does not favor forfeitures, and their prevention is within the protecting care of equity, whenever wrong or injustice will result from their enforcement; and to prevent their enforcement affords a large share of equity jurisdiction.

If we test the case at bar by the rule established by these authorities, it will be found that there has not been a forfeiture. The restraint was upon a conveyance of the property within a limited period. We must presume that the language employed was intended to prevent the transfer of the property or the title to it, in the ordinary manner, and by the usual and proper instruments employed for that purpose. And all know that such an end is usually accomplished by a deed which purports to convey the title. All know that a bond for a deed does not produce that result, nor does a lease for a term of years. Under no construction which can be reasonably given to this language can the lease for ninety-nine years be held inoperative, or to have violated the condition. It expressly authorized it to be leased for a term of years, and this is such a lease. Nor is it an answer to say that he had already leased the premises for a shorter period of time. No person would contend that he was not fully empowered to execute a lease at the end of each year for the ensuing year, until the time expired that the condition prohibited a conveyance of the property itself. So far, then, from prohibiting the making of more than one lease, we have seen that he was authorized to make a number.

The language, we have seen, must be strictly construed, and the limitation or condition must have a literal construction.

55—49th Ill.

434          VORIS *et al.* *v.* RENSHAW.          [Sept. T.,

Opinion of the Court.

When we apply, then, the strictest rules of law, in the language of the books, neither the bond nor the lease was a conveyance of the property. In a legal sense, a bond does not convey any title. It is but an obligation to convey at a future time. It is in no sense a conveyance, and we have seen that where a party is insisting upon the forfeiture of an estate, under a condition of his own creation, he must bring himself clearly within the terms of the condition. We have no right to extend the condition beyond its terms. We cannot say an act not embraced within the language, is within the spirit of the condition, and will be substituted for the act prohibited by the terms of the condition. To do so would be to give a liberal, instead of the strictest legal, construction. To say that, while the condition only imposed a forfeiture by an attempt to convey the property within the limited period, by an instrument capable of conveying it, yet it was forfeited by executing an instrument that does not convey, and, all know, does not have that effect, would be to give a liberal and not a strict construction.

The construction here given is no more strict than that given in Dumpor's case, *supra.* In that and numerous similar cases, the injury contemplated by the lessor, by a second assignment of a lease without his consent, was as great as would have been a first assignment, and yet, as he had failed to prohibit it by express terms in the condition, it could not operate to produce a forfeiture. So, of a condition that the term shall be forfeited in case the lessee shall under-let, in whole or in part, still, if he assign the whole term it does not work a forfeiture, because the language did not prohibit an assignment, although it might produce the same result that would ensue from under-letting. So, in this case, George Morton did not say, in the condition which he annexed to this estate, that Peter should not agree to sell and execute a bond for a conveyance at the expiration of the period he had limited. And we could not, under these authorities, hold

that a forfeiture had been incurred, unless the act had been prohibited by the condition.

Nor is it an answer to say, where the purchase money is paid and an obligation for a conveyance is given, that it is an equitable conveyance. It is true, that in equity it is a rule that what should have been done, will in that tribunal be considered as done, and hence it is called an equitable title. But it is only so far a title, that the court will enforce an agreement and compel a conveyance of the title, and will prevent the holder of a legal title from asserting and enforcing inequitable claims under it. But according to the ordinary and general use of language, it is not understood that real estate is conveyed by a bond for a title. Such is not the legal sense, nor is it the general understanding of the community; and we must presume that the language was used in its ordinary acceptation. But if we apply the technical meaning, real property can only be conveyed by deed, fine and recovery, or some of the modes of common assurance, and a bond for a conveyance is not of that character.

Inasmuch as equity does not favor forfeitures, but refuses to enforce them, unless it be to promote justice, and to prevent the perpetration of injustice and wrong, a clear case, appealing to the principles of justice, must be made out before a forfeiture will be enforced in that tribunal. In this case, appellee paid $10,000 as the price of the property, and, for aught that we can see, it was all that it was worth at the time. There is no evidence of any undue advantage, fraud or oppression, in procuring the lease and the bond. And the mere fact that it may be supposed that George Morton intended to prohibit, but did not, such a contract, did not, as we have seen, prevent appellee from so contracting, nor does it render the contract void.

Again, Voris seems to have acted upon the supposition that there had been no forfeiture. Had there been a forfeiture, the fee would have returned to and been re-invested in George

Morton, the grantor. But Voris purchased of the heirs at law of Peter Morton, evidently upon the supposition that he died seized of the title, and that the estate descended to his heirs. And as he acquired the legal title from them, he took it precisely as they held it,—a mere naked legal title, subject to appellee's equitable rights, acquired by the lease and the bond for a conveyance,—and he holds that title as a trustee. As appellee could, if Peter Morton were living, compel him to execute a conveyance under the bond for a title, his heirs inherited it in the same manner, and Voris took the title subject to the same liability to convey, and must, under the bill and proofs, be compelled to invest appellee with the legal title to the property, according to the prayer of the bill. And his cross-bill was properly dismissed.

For these reasons, the decree of the court below must be affirmed.

*Decree affirmed.*