WILLIAM H. FIELD AND HENRY FIELD v. JOHN MILLS.

An assignment is not a violation of a covenant in a lease not to underlet.   The authority of *Greenaway* v. *Adams*, 12 *Ves.* 395, rejected.

Field et al. v. Mills.

This was a writ of error to the Circuit Court of the county of Essex.

William H. Field took a lease for certain premises from John Mills, in which lease was the clause following, viz.: " And I, William H. Field, engage not to let or underlet the whole or any part of the said premises, and to use and occupy the same as a drug store, and for no other business or purpose whatsoever, without the written consent of the said John Mills, under the penalty of forfeiture and damages."

The lessee having assigned this lease to Henry Field, the landlord, Mills, brought ejectment, and obtained judgment in his favor in the Circuit Court.

For the plaintiffs in error, *G. W. Cumming*.

For the defendant, *John W. Taylor*.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The right of the plaintiff in ejectment rests on the ground of a forfeiture on the part of his tenant. The lease contains a clause against underletting, under the penalty of forfeiture; the tenant assigned his term, and the question decisive of the case is whether such act, at the will of the landlord, destroys the tenancy ?

The rule is universally admitted that a covenant not to assign a lease, is not broken by an underletting ; but it is said that the converse of this is not true, and that an assignment is a violation of a stipulation not to underlet. This is the rule incorporated in many of the text books ; the inquiry is, how far it is well founded.

The doctrine is of modern origin, having no title to belong to ancient usage or tradition. Its sole authority is *Greenaway* v. *Adams*, 12 *Ves.* 395, decided by Sir William Grant, in 1806. I am not apprised that the principle thus adopted has since received any sanction from the English courts ; the case, therefore, as an exposition of law, must rest on its own merits.

The point for judgment was presented in this wise : the bill prayed the specific performance of an agreement by the defendant to sell a leasehold interest in a public house ; the defendant had offered to set over her interest, but such offer had been rejected, on the ground that she had no power to assign on account of a covenant in her lease against under-letting. The master of the rolls, after adverting to the admitted rule, that an agreement not to assign will not restrain from underletting, remarks, " but upon the other hand, it would be very strange, if the landlord meant to restrain underletting, that he should not mean to forbid the tenant to part with the whole interest." This is the entire groundwork for the decision which follows, there being no further reasoning on the subject. The question then arises, is the reason here expressed sufficient to authorize such an enlargement of the covenant not to underlet so as to convert it into a prohibition against an assignment? As a covenant not to underlet does not, by force of the language used, embrace an assignment, such a capacity can be given to it only in the way of a conjecture, which Sir William Grant appears to have thought, in the case before him, was demonstrative, that a lessor who declares that his tenant shall not underlet must intend to forbid him to assign. The usual rule of construction, and one which cannot be too sedulously guarded, is, that the intentions of parties to contracts must be gathered from the words used by them. The question never is, what purpose they intended to express, but what purpose they have expressed. The moment we depart from this maxim everything is uncertain and unstable, because we have stepped from the field of construction into that of supposition and conjecture. Take this case—a lease embraces a parcel of land disconnected from the principal farm demised, and there is a prohibition against the use of the only way owned by the landlord, leading to such detached parcel. Upon settled rules, no doubt could exist that the exclusion from the right to use the way would not be an exclusion from the right to use the detached parcel of land, the tenant

Field et al. v. Mills.

obtaining a right to reach it over the land of strangers; but if we could resort to conjecture, even this result would not be clear, for it might, with some plausibility, perhaps, be said "to be very strange, that if the landlord did not intend to except the parcel of land that he should exclude the tenant from the way leading to it." But the conclusive answer to such a conjectural interpretation would be, that the language of the lease on the point was unambiguous and certain—and that, consequently, there was no room for suppositions. How does it happen, then, that this ordinary rule of construction was not applied in *Greenaway* v. *Adams?* It is certain that in that case there was no ambiguity of language; the words used were clear, and had a definite signification; it was admitted that by force of the terms used the tenant had agreed not to underlet. Now, an underletting is an entirely distinct thing from an assignment; and if, by construction, the one is to be held to embrace the other, it certainly must be by the application of a principle entirely anomalous. The rule thus introduced would seem to be this, if by the use of clear terms the doing of a certain thing is prohibited, and if in consequence thereof it seems very strange that something else was not likewise prohibited, that in such case we are to regard the latter act as within the prohibition. The admission of such a principle would seem to unsettle the entire system regulating the construction of contracts. I doubt if it has ever been applied in another instance.

Nor can I consider the case of *Greenaway* v. *Adams* correctly settled even on the ground of conjectural interpretation. Was it "very strange that if the landlord meant to restrain underletting that he should not mean to forbid the tenant to part with his whole interest?" A person advised of his legal position might very intelligently do this. In many respects an under lease is more unfavorable to the owner of the land than an assignment. An under tenant taking the possession does not put himself in privity of estate with the original lessor; nor is he liable to him for the

performance of the covenants running with the land—such as the covenant to pay rent, or to keep the premises in repair. An assignee of the lease, on the contrary, can claim no such disconnection or exemption. Is it then so improbable that a landlord might be willing to permit an assignment, and yet might be opposed to an undertenancy? That he might say to his tenant, you may turn over your whole interest, because the assignee will, in point of estate, be in privity with me, and will be compellable to perform the most important covenants in the lease, but I cannot consent to receive an under tenant who will be a stranger to my title, and whom I can hold to no responsibility? I am at a loss to perceive anything irrational or even improbable in a provision of this kind. And yet this assumed improbability is the sole reason suggested by the master of the rolls for his judgment.

But there is another reason why this case should not be taken as an authority, which is, that it stands in direct opposition to the reasoning of the adjudications which establish the converse rule. *Crusoe* v. *Bugby*, 2 *Black*. 766, is the leading case on this subject, the court holding that a covenant not to assign did not extend to an under lease. The consideration leading to this conclusion is thus expressed by the reporter: " The courts have always held a strict hand over these conditions for defeating leases. Very easy modes have always been countenanced for putting an end to them. The lessor, if he pleased, might certainly have provided against the change of occupancy as well as against an assignment; but he has not done so by words which admit of no other meaning." Now it is clearly impossible to apply this rule of construction to the case in Vesey, without changing its result. If both cases are to stand, then we have this contradiction, that when the covenant is not to under let, it will be extended to an assignment, without any words giving it that effect; but when it is a covenant not to assign, it will not embrace an under letting without the addition of words that admit of no other meaning. There is no propriety in the application to the same class of cases, of such incon-

gruous rules.   I reject, therefore, altogether, *Greenaway* v. *Adams*, as an authority.   The same course was taken with regard to this case in *Lynde* v. *Hough*, 27 *Barb*. 415, in which a covenant not to let or underlet the whole or any part of the premises, was construed not to include an assignment.

In *Den* v. *Post*, 1 *Dutcher* 291, in the opinion delivered in this court, the case of *Greenaway* v. *Adams* was referred to with apparent approval, so as to justify, if not necessitate, the ruling made at the circuit in the present case.   But in the reported case, this question now presented was only incidentally involved, and I do not understand that any matured opinion was intended to be expressed on the subject now decided.   Indeed, from the studied caution displayed in the expressions used touching this doctrine, my inference is, that it was left, *ex industria*, open for future consideration.

Before dismissing the case of *Greenaway* v. *Adams*, it should be remarked, that although that decision is often cited to sustain the rule which I have been compelled to discard, yet, the covenant there was, in substance, prohibitive of an assignment as well as of an under letting.   The stipulation was that the tenant should "not let, set, or demise the before-mentioned messuage, &c., for all or any part of the said term of twenty-six years, hereby demised."   An agreement not to under let for the whole term was, in effect, an agreement not to assign ; a principle acted upon in the recent case of *Beardman* v. *Wilson*, *L. R.* 4 *C. B.* 57.   The general conclusion, therefore, of the master of the rolls, from the facts before him, is clearly unimpeachable, and properly restricting, in view of such facts, the expressions which he used, it is obvious there does not remain much of a basis whereon to rest the irregularity which I have been unwilling to adopt.

In conclusion, I think the covenant against an underletting was not broken by an assignment of the term, and that, consequently, the judgment below should have been in favor of the defendants.

The judgment must be reversed.   .