## Joliet Gas Light Company v. J. E. Sutherland.

1. REAL ESTATE—*Non-performance of Conditions Subsequent— Waiver of Forfeiture.*—A non-compliance with a condition subsequent does not of itself determine an estate, as the right to enforce a forfeiture may be waived. Notwithstanding the breach, the estate abides in the grantee until it is defeated or determined by the election of the grantor.

2. FRANCHISES—*Acts Done in Pursuance of, Inure to Benefit of the Owner.*—A held a franchise giving him the right to lay gas pipes in the street and alleys of a city, and contracted with B to form a gas company, A to furnish the franchise and B to furnish the money to construct a plant and lay pipes. Under this contract B laid pipes in two streets and then abandoned the work. *Held,* that the pipes when laid became attached to the easement belonging to A, and that B, by his abandonment of the contract, lost all his rights in the pipes.

3. APPEALS—*When a Remedy at Law is Not Available on Appeal.*—

The existence of a remedy at law can not be set up on appeal to defeat an injunction, when not presented by way of demurrer or answer to the bill in the trial court.

**Bill for Injunction.**—Appeal from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the May term, 1896. Affirmed. Opinion filed December 9, 1896.

C. W. BROWN and FRED BENNITT, attorneys for appellant.

HALEY & O'DONNELL, attorneys for appellee.

MR. PRESIDING JUSTICE HARKER DELIVERED THE OPINION OF THE COURT.

On the 13th of April, 1889, the city of Joliet, by ordinance, granted to Michael Moran the right to erect gas and electric light plants, and lay pipes in the streets and alleys of the city, under certain conditions. According to the terms of the ordinance, and an extension subsequently made, the works were to be completed, ready to supply gas, by November 1, 1891.

In the summer and fall of 1889 a corporation to erect and operate a gas plant under the ordinance was organized by Moran, W. H. White of New York, W. W. Goodwin of Philadelphia, H. M. Kinsley and F. G. Beach of Chicago. It was arranged for Moran to have $5,000 paid up capital stock, and to be superintendent at a salary of $125 per month. Under that arrangement he executed and left with J. W. Downey, an attorney, in escrow, a deed of all his right under the ordinance to the corporation, but the deed was never delivered.

Pending the organization of the company, a gas main and other pipes were laid for some distance upon two of the streets, at an expense of $6,528, including the salary paid to Moran as superintendent. That sum was paid by White. Nothing further was done under that organization toward laying pipes or erecting the plant. Moran continued as superintendent and drew his salary until the fall of 1890, when it was discontinued. It had been agreed that White, with the assistance of Goodwin, should furnish the money with

which to complete the works. That failing, Moran repossessed himself of the deed which he had left in escrow, and in 1892 secured the passage of another ordinance granting him the right to construct a gas plant, etc., to be completed November 1, 1894. In October, 1894, he secured an extension of the time to complete the plant until November 22, 1895.

On the first of August, 1895, Moran conveyed and assigned to appellee, John E. Sutherland, all his right and interest granted by the various ordinances mentioned, and all right and interest in the pipes laid, incomplete structure, and contracts which had been made with parties for the supply of gas. Sutherland took possession and began making changes with a view to connecting with house pipes. During the same month Ira C. Copley, being a large owner of stock in the Joliet Gas Light Company, a corporation engaged in the gas business in Joliet, visited White in New York, and procured from him an assignment and transfer of the gas mains and pipes laid in the streets under the supervision of Moran in 1890, for $1,000, of which $100 was paid down and balance to be paid in two years provided Copley could establish himself the rightful owner of the pipes under the assignment. On the 31st of August, 1895, Copley executed a bill of sale of the mains and pipes to the Joliet Gas Light Company, which company began at once to make preparations to connect certain of its mains with such pipes, and use the same. Thereupon, Sutherland filed a bill in the Circuit Court enjoining the Joliet Gas Light Company, appellant, from connecting with or using said pipes. A temporary injunction was granted by the master. Two days afterward appellant filed a bill to restrain appellee Moran and one T. J. Highland from using or connecting with said pipes. A temporary injunction was obtained on its bill. Answers were filed and the two cases were tried together. In the first case, a decree was granted in favor of Sutherland, making the injunction perpetual. In the other case, the injunction was dissolved and the bill dismissed for want of equity. Appeals are prosecuted in both cases.

Joliet Gas Light Co. v. Sutherland.

It was contended in the Circuit Court that inasmuch as the gas works were not completed within the time limited by the ordinance of 1889, and the subsequent extension, the franchise to Moran became void; that Moran did not lay the gas pipes on his own account, but as an employe of other persons or corporations; that he could not transfer any right in the franchise or in the pipes to Sutherland, because he had none, and that the ownership in the pipes was in appellant by virtue of the assignment and conveyance from White to Copley and from Copley to it.

. All of those contentions are made here with the additional one that appellee's remedy was complete at law, and that a court of chancery has not jurisdiction of the case as presented by his bill and proofs.

To the first contention, it is sufficient to say that the only party having a right to insist upon a forfeiture by reason of a non-fulfillment of the condition subsequent, that the plant should be complete by November 1, 1891, was the city of Joliet. The provision requiring the completion of the works by that date or the ordinance should be void, was inserted for the benefit of the city. It nowhere appears that the city has ever sought to avail itself of that provision; but, upon the contrary, has manifested its desire to keep Moran's franchise alive by re-enacting the ordinance in 1892, and by extending the time limit in 1894. No third party could invoke to his benefit that provision of the contract so long as the parties to the contract are willing to waive it. Ludlow v. N. Y. & H. R. Ry. Co., 12 Barb. 440. Forfeitures for breach of conditions subsequent are not favored by the courts of this State. Clark v. Lyons, 25 Ill. 105; Voris v. Renshaw, 49 Ill. 425; Palmer v. Ford, 70 Ill. 369; Mott v. Danville Seminary, 129 Ill. 403.

To the contention that Moran did not own the pipes (having laid them as an employe), but that they were owned by White, because Moran made a deed of the franchise, left it with the attorneys of the parties, and thereby induced White to incur all the expense of material and labor necessary to the work, it may be replied that the deed was merely delivered in escrow, to become operative only upon condition of

Moran receiving $5,000 in paid up stock and the permanent position of superintendent. The purport of the agreement was that White should construct the plant and lay the pipes under Moran's franchise, and turn the completed works over to the corporation, and that Moran should then turn over to the corporation the franchise, and receive in payment the $5,000 in stock and the position of superintendent. But White failed to construct the work. The enterprise was abandoned. That he invested nearly $7,000 in it and then abandoned it is no fault of Moran's. White and his coadjutor, Goodwin, violated their contract, and not Moran. When the enterprise was abandoned and Moran repossessed himself of his deed, he owned the franchise and all privileges going with it.

The interest which Moran had in the streets by virtue of his franchise was an easement. When the line on which to locate the mains in the street was fixed and the pipes were laid, the easement became fixed and perpetual, subject only to the limit provided in the contract for the completion of the works. White's abandonment of the work left Moran in a position to dispose of his right in the easement and the pipes in any mode he might see fit, consistent with the rights of the city under the contract. Clearly, the right of the litigation is with Moran's purchaser, the appellee.

To the contention that appellee has knocked at the wrong door of the court, and should have sought entrance at the forum where rights at law are declared, it may be observed that appellant has been a long time in finding that out Appellant did not demur to the bill, nor did it, by any averment in its answer, question the jurisdiction of the court; but by denying ownership of the pipes in appellee, and claiming to be the owner itself, it tendered by its answer, as an issue of fact, the question of ownership. Having done so, and having that question determined against it, it is now too late to raise the jurisdictional contention for the first time in this court. Mason v. Bragdon, 159 Ill. 61; Village of Vermont v. Miller, 161 Ill. 210.

The evidence supports the decree.