## Keopple v. National Wagonstock Company.

### Opinion delivered June 24, 1912.

1. Contracts—Mutuality.—A contract for the purchase of logs which binds the purchaser to take the number of logs necessary for his require-

ments at any time, which fixes the price and provides that when the seller shall be unable to furnish logs the purchaser may purchase from other parties until such time as the seller "shall again be able to furnish them," does not lack mutuality because of the quoted clause, which merely enables the purchaser to buy elsewhere in case the seller is unable to furnish the logs as needed.    (Page 473.)

2.  SAME—CONSTRUCTION—INTENT OF PARTIES.—In construing a contract the court may place itself in the situation of the parties, so as to judge of the meaning of the words used and apply the language to the things described.    (Page 473.)

3.  SAME—CONSTRUCTION—ACTS OF PARTIES.—What the parties have done under a contract is generally convincing evidence of what they understood the contract to mean and of their intention in making it. (Page 474.)

4.  LOGS AND LOGGING—CONTRACT—CONSTRUCTION.—A logging contract requiring plaintiff to furnish a specified quantity of logs annually and defendant to pay for them, and giving plaintiff the privilege of disposing of logs in excess of the requirements of defendant's mill on thirty days' notice from defendant not to cut any more logs, does not authorize either party to terminate the contract on giving the other thirty days' notice.    (Page 474.)

5.  PLEADING—DEMURRER.—On a demurrer to a complaint the allegations thereof are taken as true.    (Page 475.)

Appeal from Pulaski Circuit Court, Second Division; *F. Guy Fulk,* Judge; reversed.

STATEMENT BY THE COURT.

Appellants and appellee entered into the following contract:

"This contract, made by and between the National Wagonstock Company of Little Rock, Arkansas, a corporation, and B. A. Keopple and R. R. McIntosh, copartners, doing business under the firm name and style of Keopple & McIntosh.

"Know all men by these presents that the National Wagonstock Company do hereby agree to take and have Keopple & McIntosh, as the sole logging contractors for their mill in Little Rock, Arkansas, for and during the term of five years from date, and do hereby agree to purchase from the said Keopple & McIntosh, copartners, logs for the aforesaid mill, at the following prices and under the following terms, Doyle's scale of measurement to govern:

| | |
|---|---|
| White oak, 14 inches and up | $24.00 per 1,000 |
| Hickory, 12 inches and up | 24.00 per 1,000 |
| Red oak, 16 inches and up | 18.00 per 1,000 |
| Gum, 18 inches and up | 8.00 per 1,000 |

f. o. b. cars within a radius of one hundred and fifty miles of Little Rock, Arkansas, and be free from sap rot, worms, knots, shakes, and like defects; straight grained, suitable for bending purposes and wagon material, and cut in lengths as directed by the company. The shipping of said logs is to commence within fifteen days from the date of this contract, and continue so as to furnish the necessary material for the the mill to run. Whenever Keopple & McIntosh shall be unable to furnish logs for any reason, the National Wagonstock Company may purchase from other parties until such time as Keopple & McIntosh shall again be able to furnish them. That the logs are to be inspected once a week at points of loading and shipping, and inspection turned in at once, and then logs paid for, and, in case logs are banked, the banking shall be after October 1 of each year of this contract, and when banked shall be inspected once a week and paid for, less $2 per 1,000 reserved for loading, and there is not to be any logs inspected and taken up under this contract that is sap rotten or worm eaten. When banked logs are shipped, the $2 to be again added to price. The said Keopple & McIntosh agree to furnish not less than two and a half million feet of logs each year during the life of this contract, or sufficient to keep the bending plant running, and the National Wagonstock Company shall only be required to take the number of logs necessary for their requirements at any time. The said Keopple & McIntosh to have the privilege of otherwise disposing of logs they may get out in excess of the requirements of the bending plant on thirty days' written notice from the National Wagonstock Company to them not to cut or deliver any more logs, and the National Wagonstock Company agree to take all logs cut up to the time the aforesaid notice is served on the said Keopple & McIntosh. The prices named above in this contract may be revised by mutual agreement of the parties hereto on January 1, 1913. This agreement entered into and executed on this 21st day of March, 1910.

> (Signed)   "National Wagonstock Company,
> "By F. L. Mitchell, President.
> "B. A. Keopple,
> "R. R. McIntosh."

Appellant sued the appellee, setting up the contract in their amended and substituted complaint, and made the same Exhibit A thereto, and, among other things, alleged as follows:

"The plaintiff and defendant at all times understood, and for more than five months both parties operated under the contract with that understanding and agreement, that the defendant was to take and the plaintiffs were bound to furnish two and one-half million feet per year. That the plaintiffs were at all times willing and ready to carry out their part of the contract; that they had expended large sums of money with the understanding and under the belief that they were compelled to furnish at least two and one-half million feet per year, and with the knowledge of the defendant they expended a large sum, towit, about $25,000, in buying timber lands preparatory to carrying out their part of the contract. That at the time of the breach of the contract by the defendant the plaintiffs had secured and paid for sufficient timber to fulfill the contract for the remainder of its full term thereof; that they had operated under the contract for five months, and were able and ready to furnish before the end of the year the first two and one-half million feet of logs. That defendant, without default of the plaintiffs, cancelled and made a breach of the contract without giving the plaintiffs the thirty days' notice as required by the contract. That the plaintiffs had cut and had on hand ready for shipment at the various places from which they had been shipping logs about one and one-half million feet, as follows, towit: At Okolona, ready for shipment and cut in the woods, 700,000 feet; at Delight, cut 50,000 feet; at Whitlow, 500,000 feet; at Bigelow, 75,000 feet; at Tinsman, 50,000 feet; at Ozan, 75,000 feet. That, by reason of the wrongful breach of the contract by the defendant and its failure to give notice, the contract having provided that the defendant agreed to take all the logs cut up to the time the aforesaid notice is served on the plaintiffs, the plaintiffs lost on an average of $10 per thousand feet, making a total loss on this account of fourteen thousand five hundred dollars ($14,500). That, after the breach of the contract by the defendant, the plaintiffs used their best efforts to sell the logs cut to the best advan-

tage, but were compelled to work them up into staves and use for other purposes for which they were not cut, and sustained, not only the loss in price, but a large loss in timber, aggregating the said sum of $14,500. That the defendants knew that the plaintiffs were buying timber and making outlays to meet their part of the contract, and, notwithstanding this knowledge, defendant never at any time notified plaintiffs, by its officers, that it did not intend to take at least two and one-half million feet of logs per year. That without any fault of the plaintiffs the defendant, on August 6, 1910, refused to take any more logs, and had, in many ways before and since that time, made material breaches of its contract. That plaintiffs are ready, able and willing to carry out their part of the contract, and are now offering to do so. That defendant knew that plaintiffs were buying timber suitable for its special purposes, and that plaintiffs had purchased teams and equipment in getting ready to carry out the contract; and defendant knew that plaintiffs would not need the teams and equipment but for the fact that they were going to furnish the defendant two and one-half million feet of logs per year; and that by reason of the breach of the contract on the part of the defendant the plaintiffs lost $10,000 on this item of teams and equipment. That plaintiffs, if they had been permitted to carry out the contract, would have made a profit of $10 per thousand feet on all logs furnished under the contract. That plaintiffs are able, willing and are prepared, having timber, teams and equipment, to furnish for the remainder of the contract 11,500,000 feet of logs, which is the amount called for in the contract. That they have lost this profit by the wrongful breach of the contract by the defendant. That all of these facts and conditions were well known to the defendant, and were contemplated by its officers and agents; and that they knew that by causing a breach of the contract the plaintiffs would lose on this item the sum of $115,000. Wherefore plaintiff prays judgment against the defendant in the sum of one hundred and thirty-nine thousand, five hundred dollars ($139,500) and costs, and for all other and proper relief."

After the parties had been operating under the contract about four months, the president of appellee wrote appellants complaining because the mill had been "shut down for want

of logs." In that letter, after referring to the contract, he says: "The understanding being that you were to keep us supplied with logs in sufficient quantities to keep the mill running, and I am somewhat at a loss to understand why you have not been able to carry out your part of the understanding." And again: "You, of course, understand that we have been depending solely upon you for the supply; and, unless you can furnish the logs, we will, of course, be obliged to make other arrangements, and it is highly important that the mill be kept busy. We are paying you a higher price for the logs than we ever paid before, as you know. We pay the price to get the service, and we expect that you will give it to us. Will you kindly inform me whether from this time on you will be able to give us as many logs as we require."

In answer to this letter the appellants wrote in part as follows:

"Local weather reports for the month of June advise that it rained all but eight days in that month, and for the month of July it has continued to rain almost daily. To show how much in earnest we are in this matter, we wish to state that we have advanced, spot cash, $4,640.65, our pledges for $2,533.32 more, and a cash investment in teams and equipment of $2,986.50, making a total investment of $10,170.48. We admit that we are behind on our contract calling for 2,500,000 feet per year for five years, or an average of 208,333 feet of logs per month. To take care of a contract of this kind, it should be a very plain proposition that we will in some months have to more than double this average, as there are some months in Arkansas that it is an almost impossibility to get out logs, and this throws the responsibility on you to take care of these logs in the months that we can make our best shipments. We have been shipping two and one-third months on an average of 152,071 feet of logs per month. We are now getting in shape to increase this average, and we feel confident that we will be fully able to keep your factory well supplied in the near future."

The above letters are set forth in the complaint. There was a demurrer to the amended and substituted complaint, which the court sustained. The appellants standing on the

complaint, the court entered judgment dismissing same, and appellants prosecute this appeal.

*Carmichael, Brooks & Powers,* for appellants.

In arriving at a proper construction of the contract, the whole of it must be considered and all its parts construed together; and the situation of the parties and the circumstances surrounding them at the time of making the contract must be considered as well. The contract was mutual and binding on the parties—on the appellants to furnish, and on the appellee to pay for, at least two and one-half million feet of logs. 94 Ark. 9, 11, and cases cited; 1 Page on Contracts, 308; 81 Am. St. Rep. 229, 230, note; 130 N. Y. 642, 15 L. R. A. 218; 110 Ill. 427; L. R. 9 C. P. 16; 20 La. Ann. 220; 31 L. R. A. 529. See also 61 L. R. A. 402, 406; 35 L. R. A. 633.

*Caruthers Ewing,* and *Mehaffy, Reid & Mehaffy,* for appellee.

1. The only way that any meaning can be given to the clause of the contract wherein appellant agrees to furnish two and one-half million feet of logs each year, etc., when construing the contract in connection with the preceding clause providing that whenever appellant "shall be *unable* to furnish logs for *any reason*" appellee may "purchase from other parties until such time as Keopple & McIntosh shall again *be able* to furnish them," is that they were to cut the one and one-half million feet, provided they were able to do so, but, if not able to do so, they were not bound to do anything.

When two clauses of a contract are in conflict, the first prevails. 69 N. W. 354; 2 Parsons on Contracts 513; 2 Blackstone's Com. 381; 34 Atl. 648; 26 Me. 538; 3 Wend. 99; Wharton on Contracts, 873; 1 Addison on Contracts 186; 111 Tenn. 186.

2. A contract to be enforceable must impose mutual obligations upon the parties thereto. 90 Ark. 504; 93 Mich. 491; 29 Am. Rep. 530; 117 Mo. App. 19; 96 Ark. 184; 68 Fed. 791, and cases cited; 1 Page on Contracts, art. 304; 77 Cal. 106; 50 N. E. 646; 43 N. E. 93; 46 S. W. 432; 62 Am. Dec. 316; 88 Fed. 207; 89 Fed. 173.

3. The damages claimed by the appellant are purely speculative and uncertain, and not recoverable. 56 Cal. 131;

24 N. W. 344; 46 Fed. 40; 34 Ark. 184; 26 Kan. 482; 24 Am. Rep. 735; 33 Ind. 54; 38 Me. 361; 13 Mo. 314; 42 Am. Dec. 38; 16 Barb. 386.

4. The contract authorized either party to terminate it on thirty days' notice, and, this being true, nothing is left of the complaint but the allegation that appellants lost on the logs on hand at the time notice was given. 95 S. W. 706; 21 Ga. 97; 73 Ill. App. 691; 35 N. W. 841.

WOOD, J., (after stating the facts). *First:* The appellee contends that the contract "is unilateral," "lacks mutuality," and is therefore unenforceable, because of the following clause: "Whenever Keopple & McIntosh shall be unable to furnish logs for any reason, the National Wagonstock Company may purchase from other parties until such time as Keopple & McIntosh shall again be able to furnish them."

The contract was prepared by appellee, as shown by a telegram set forth in the complaint. The clause under consideration was inserted, not for the purpose of relieving appellants of their obligation "to furnish not less than two and a half million feet of logs each year," but to enable appellee, in case appellants were "unable to furnish logs for any reason," to "purchase from other parties." It is manifest that, when all the provisions of the contract are considered together and from the viewpoint of the parties when they executed it, the clause under consideration was solely for the benefit of appellee.

In *Wood* v. *Kelsey,* 90 Ark. 272-77, we said: "Courts may acquaint themselves with the persons and circumstances that are the subjects of the statements in the written agreement, and are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so as to judge of the meaning of the words and of the correct application of the language to the things described." *Loudenbeck Fertilizer Co.* v. *Tennessee Phosphate Co.,* 61 L. R. A. 402; *Hoffman* v. *Maffioli,* 47 L. R. A. 431; *Rockefeller* v. *Merritt,* 35 L. R. A. 633; *Minneapolis Mill Co.* v. *Goodnow,* 40 Minn. 497.

"The construction of a contract does not depend on any formal arrangement of words, but on the reason and sense

of the matter collected from the whole contract. *Johnson* v. *Wilkerson*, 96 Ark. 320; *North & South Rolling Stock Co.* v. *Ohara*, 73 Ill. App. 691.

When these familiar rules are applied to the contract under consideration, there is no room to doubt that the parties to the contract intended that appellants should be bound to furnish, and appellee would correlatively be bound to pay for, "not less than two and one-half million feet of logs each year during the life of the contract." The parties had estimated that it would take at least that quantity to keep the mill going, and hence they stipulated that number of feet as the minimum of quantity that appellants were required to furnish. The appellee was only "required to take the number of logs necessary for their requirements at any time;" but the "requirements" of the appellee, under the contract, were two and one-half million feet. Its obligation to take that quantity imposed upon appellants the corresponding obligation to furnish that quantity. The obligations to furnish and to take were reciprocal and binding obligations. See *Thomas-Huycke-Martin Co.* v. *Gray*, 94 Ark. 9.

As thus construed, there is no incompatibility or repugnance in the provisions of the contract; but they harmonize with each other, and thus effectuate the evident purpose of the parties. That such was the understanding and agreement of the parties is also clearly shown by the correspondence between the parties after they had operated under the contract for several months. What the parties have done under a contract is generally convincing evidence of what they understood the contract to mean and of their intention in making it.

*Second.* The amended and substituted complaint took the place of the original complaint. There is no provision in the contract authorizing either party to terminate the contract on giving to the other thirty days' notice, as contended by appellee. The notice provided for gives the appellants the right to dispose of the excess of logs beyond the requirements of the bending plant of appellee upon thirty days' written notice from the latter to the former not to cut or deliver any more logs. The notice has no reference to the

termination of the contract, but only, as stated, to the disposition by appellants of an excess of logs.

But, even if the notice specified had reference to a termination of the contract, the amended and substituted complaint, which alone can be considered, recites "that defendant * * * made a breach of the contract without giving the plaintiffs the thirty days' notice required by the contract;" and, again, "notwithstanding this knowledge, defendant never at any time notified plaintiffs, by its officers, that it did not intend to take at least two and one-half million feet of logs per year."

On demurrer, these allegations as to want of notice must be taken as true.

*Third.* The contract was not void for uncertainty. It is sufficiently definite to ascertain the damages that would accrue from its breach. The complaint states a cause of action, and the demurrer should have been overruled.

The judgment is reversed, and the cause is remanded with directions to overrule the demurrer.