MARION HOTEL COMPANY *v.* DICKINSON.

Opinion delivered December 15, 1919.

1.   CONTRACTS—MUTUALITY.—A written contract for the removal and use of trash and garbage accumulating at a hotel so long as the contracting firm "handle it satisfactorily to the" hotel company is lacking in mutuality, in that no time for performance is specified, and therefore may be terminated at the will of either party.

2.   CONTRACTS—AGREEMENT NOT TO REVOKE.—Where such contract was verbally amended subsequently by a stipulation for a year's notice by the hotel company before revoking it, this implied a reciprocal obligation of the firm to continue the services at least the full period of the notice, so that the contract as amended was not lacking in mutuality.

3.   DAMAGES—BREACH OF CONTRACT.—In an action for the breach of a contract for the removal and use of the trash and garbage of a hotel, where plaintiff had a large number of hogs on hand, for which he was unable to procure feed to fit them for the market, he was entitled to recover for all loss on that account.

4.   DAMAGES—ESTIMATED PROFITS.—Where defendant broke its contract to furnish trash and garbage to plaintiff, the latter was

entitled to recover the estimated profits which he would have realized if the contract had not been broken.

5. CONTRACTS—ACCEPTANCE OF PERFORMANCE.—Slips signed by the steward of defendant's hotel, reciting that garbage had been removed "to my entire satisfaction" preclude defendant from showing that it had a right to cancel the contract because the service was unsatisfactory.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; affirmed.

*Cohn, Clayton & Cohn,* for appellant.

1. The contract lacked mutuality and definiteness and was terminable at the will of either party. 64 Ark. 398; 110 *Id.* 444; 212 S. W. 313; 96 Ark. 184; 68 *Id.* 276, 526; 35 *Id.* 156; 100 *Id.* 510; 124 *Id.* 355; 212 S. W. 330; 1 Elliott on Cont., p. 393; 38 A. & E. R. Cases 16; 6 R. C. L., p. 691, § 96; 155 N. W. 319; 42 N. E. 386; 59 Pac. 146; 28 S. E. 998; 47 L. R. A. 343; 237 Fed. 860; 194 *Id.* 324; 212 S. W. 313, 330. In view of these authorities a peremptory instruction should have been given for defendant.

2. The court improperly instructed the jury as to the measure of damages. 79 Ark. 338; 55 *Id.* 376; 55 *Id.* 409; 70 *Id.* 42; 2 *Id.* 397. Future profits are not recoverable. 103 Ark. 584-8; 111 *Id.* 474-483-4.

3. It was error to exclude the testimony of H. A. Scott. 39 Ark. 580-3; 33 *Id.* 276, 284; 66 *Id.* 37.

*Lewis Rhoton* and *Carmichael & Brooks,* for appellee.

1. The cases cited for appellant are not in point. Here there was a contract as the jury found, and it did not lack mutuality and appellee was entitled to a year's notice. 104 Ark. 466, 474; 94 *Id.* 9; 64 *Id.* 398; 84 Am. St. 52; 51 *Id.* 301-303; 104 Ark. 466; 35 L. R. A. 512.

2. The court properly instructed the jury. 69 Ark. 219, 223; 78 *Id.* 336; 80 *Id.* 228; 91 *Id.* 427; 95 *Id.* 363; 97 *Id.* 522; 103 *Id.* 584; 78 *Id.* 345; 103 *Id.* 548; 8 L. R. A. (N. S.) 257 and notes.

3. Scott's testimony was properly excluded.

McCULLOCH, C. J. Marion Hotel Company, a domestic corporation engaged in operating a hotel in the city of Little Rock, entered into a written contract with appellee for the removal and use by the latter of all of the trash and garbage accumulating at said hotel. The contract recited a cash consideration of one dollar, and mutual obligations of the respective parties, one to permit the other to remove the trash and garbage, and the other to remove it twice per day from the hotel and "to return all silver, towels and other material belonging to the hotel company." The contract also specified that the lids of the garbage cans were not to be removed while being hauled, and that the requirements of the government with respect to sanitary rules were to be observed The contract was dated December 24, 1917, and did not specify any period of duration, but concluded with the following paragraph:

"This agreement is to begin on the first day of January, 1918, and continue in force as long as Dickinson & Wilbourn handle it satisfactorily to the Marion Hotel Company."

The contract was executed by Mr. Everett, the manager for the Marion Hotel Company, and the firm of Dickinson & Wilbourn, but later Wilbourn retired from the firm, and appellee Dickinson alone undertook to perform the contract, and he continued in the performance of the contract until July 17, 1918, when appellant gave notice of a discontinuance of the permission extended to Dickinson to take the trash and garbage.

Preparatory to performance of the contract appellee established a pasture and pens at a place a few miles out from the city limits of Little Rock for the purpose of keeping and fattening hogs and began the purchase and raising of hogs to be fattened for the market, expecting to use the garbage as feed. He procured wagons and other equipment to handle the garbage and kept two men in his employment engaged in doing the hauling. Appellee testified on the trial of the cause that shortly after the contract was entered into he called the attention of appellant's manager to the fact that the contract

specified no particular term or duration, and that he expected to equip himself to handle about 300 hogs at a time, and that he could not afford to thus equip himself for handling the business unless he was assured that the contract would not be rescinded short of a year's notice, and that the manager then agreed that the contract should not be revoked without such notice.

This is an action instituted by appellee for breach of the contract. Appellant in its answer admitted the execution of the writing set forth in the complaint, but denied that there was any oral contract subsequent thereto. Appellant admits that it rescinded the contract, which it contends it had a right to do under the written contract. The answer also contains appropriate denials concerning the extent and amount of damages alleged to have been sustained by appellee by reason of the alleged breach of the contract. There was a trial before a jury which resulted in an award of damages in favor of appellee in the sum of $2,500.

Appellant contends for reversal on three grounds set forth in the brief as follows:

"*First.* That the contract upon which appellee (plaintiff below) based his cause of action lacked mutuality and definiteness and was terminable at the will of either party.

"*Second.* That the lower court improperly instructed the jury as to the measure of damages.

"*Third.* That the testimony of H. A. Scott, set forth in paragraph 3 of the motion for a new trial, was improperly excluded."

The argument of appellant in support of its first ground for reversal is, we think, sound so far as it applies to the written contract. The obligations expressed in the contract lack mutuality in that no time for performance was specified, and it was therefore terminable at the will of either party. *St. L., I. M. & S. Ry. Co. v. Matthews,* 64 Ark. 398. The writing specified that it was to remain in force "as long as Dickinson & Wilbourn handle satisfactorily to the Marion Hotel Company," but there was

no expressed obligation on the part of Dickinson & Wilbourn to continue for any specified length of time, and no obligation could be implied on their part to continue as long as the service remained satisfactory to the Marion Hotel Company. It is not one of those kind of contracts where a reciprocal obligation is implied, as has been held in numerous decisions of this court. *Thomas-Huycke-Martin Co.* v. *Gray,* 94 Ark. 9; *Keopple* v. *National Wagonstock Co.,* 104 Ark. 466.

The same contention is made by learned counsel for appellant with respect to the alleged oral addition to the contract. In other words, the contention is that the subsequent verbal agreement that the contract should not be rescinded without giving a year's notice is open to the same objection that it lacks mutuality in that one of the obligors was not bound to continue the service or to give notice of a rescission of the contract.

We are of the opinion that the contract for the giving of a year's notice by one of the parties necessarily implied a reciprocal obligation on the part of the other party to continue the service for at least the full period of the notice, that is to say, for one year, and that it amounted to a mutual agreement for at least one year. The exaction by appellee of a promise on the part of the hotel company not to rescind the contract without giving a year's notice necessarily implied that he would carry on that service at least a year from that time. It is unnecessary to determine whether or not there was sufficient mutuality in the contract to extend it longer than one year.

Our conclusion, therefore, is that there was a binding contract between the parties which was enforceable and that appellant was liable for damages for the breach.

The jury found upon legally sufficient evidence that the contract was performed "satisfactorily to the Marion Hotel Company" and that appellant broke the contract without sufficient cause.

The court gave two instructions on the measure of damages, as follows:

"No. 2. If you find from the evidence that the defendant breached the contract on some ground other than the work was not carried out to its satisfaction, then you will find for the plaintiff such damages as you may find he sustained by breach of the contract, and in ascertaining the proper amount you may take into consideration whatever profits you may find from the evidence to a reasonable certainty he would have made if the contract had not been breached. And if you find from the evidence that the plaintiff was to have a year's notice before the contract should be terminated and the garbage and trash given him as long as he did the work to the satisfaction of the defendant, and if you further find that a year's notice was not given and the plaintiff did the work to the satisfaction of the defendant, then you will find for the plaintiff in such amount as you may find his entire profits would have amounted to if the contract had been carried out."

"No. 5. If you find from the evidence that the plaintiff notified the defendant that he had 275 Duroc-Jersey hogs, and he would suffer damages if the contract was breached by the defendant, then you will find for the plaintiff in such sum as will compensate him for any and all loss which you may find he sustained by being unable to prepare said 275 Duroc-Jersey hogs for market. And in arriving at such amount of damages you may take into account what it would have cost the plaintiff to feed the hogs until they were ready for market under the contract with the defendant and what it has actually cost him by reason of not being able to get the garbage, and the difference would be the amount of the verdict which you should render in favor of the plaintiff, if you find for the plaintiff."

The evidence tends to show that the appellee prepared to take care of, and fatten for market, 300 hogs at a time and that at the time of the breach of the contract he had on hand 275 Duroc-Jersey hogs which he was fattening for market, and that he sustained loss by reason of inability to procure swill to feed to the hogs. Appel-

lee in his testimony went into detail as to his method of feeding the hogs after putting them up to be fattened for market, and also testified as to the increased weight of the hogs thus handled, and the cost of feeding and the profits to be derived from the business. Instruction No. 5 relates specifically to the 275 hogs on hand, and the measure of damages declared by the court as to that lot of hogs was correct, and the testimony brought the case within the operation of the instruction. The evidence tends to show that it was impossible for appellee to get sufficient swill from the hotels and restaurants, and other sources, and that he had to buy feed at almost prohibitive prices.

The other instruction relates to the profits that would have been realized on the contract outside of the particular lot of hogs mentioned in instruction No. 5. If there was a breach of the contract, appellee was entitled to recover compensation for his losses on the 275 hogs on hand at the time of the breach, but this was not the full measure of his damages, as he was entitled to losses sustained for the remainder of the period of the contract. He was not compelled to continue to purchase or raise hogs for the purpose of carrying out the contract which appellant had broken, but was entitled to recover the estimated profits which he would have realized if the contract had been carried through. We think that the instructions can be harmonized, and that they were understood by the jury in the light of the testimony on the subject of damages.

Now as to the last assignment. Soon after appellee began the performance of the contract, he adopted a method of having the steward of the hotel to sign printed slips for the driver of each garbage wagon reciting that the "garbage and trash at the Hotel Marion had been cleaned up to my entire satisfaction." A great many of these slips were produced at the trial of the cause. Appellant offered to establish by the testimony of Scott, the steward of the hotel, facts and circumstances which tended to show that appellee had not been removing the

garbage in proper manner and to the satisfaction of the management of the hotel, but the court excluded the testimony. It is argued that these slips acknowledging the service in removing the garbage should be likened to mere receipts for the payment of money, and that the execution by the employees of the hotel company from day to day did not preclude appellant from showing as a matter of fact that the garbage had not been properly handled, or handled "satisfactorily to the Marion Hotel Company."

The weakness of appellant's contention is in treating these signed slips merely as receipts, for they amounted to more than that. The execution of those receipts constitutes acceptances of the performance of the contract from day to day, and they cannot be repudiated by appellant by showing that the contract had not in fact been performed in a satisfactory manner. Under the method of operating the business of removing the garbage, appellee saw fit to exact an approval from day to day, and appellant's authorized employee acquiesced in this method of doing business. If appellant had refused to sign the wrtten acknowledgment day by day, it would have constituted notice to appellee that the service was not satisfactory, or, at least, that the service had not been accepted as satisfactory, but the execution of these acknowledgments, in the absence of fraud or collusion, constituted a binding acceptance on the part of appellant of the past service in the removal of the garbage and prevented the reopening of that question. After having once accepted the service as satisfactory, appellant cannot be permitted to show that it had a right to cancel the contract because the service was unsatisfactory.

This disposes of the several grounds of attack made upon the rulings of the court, and results in an affirmance of the judgment. It is so ordered.